**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS
AT KANSAS CITY**

| | |
|---|---|
| **ROBIN MOORE**<br>    Address:<br>    1618 S. 7th St.<br>    Atchison, KS 66002<br><br>                                        **Plaintiff,**<br>**v.**<br><br>**ADVANCE AMERICA, CASH ADVANCE<br>CENTERS OF KANSAS, INC.**<br>    Serve:<br>    Corporation Service Company<br>    2900 SW Wanamaker Drive, Suite 204<br>    Topeka, KS 66614<br><br>                                        **Defendant.** | **COMPLAINT**<br><br>**Civ. No.: _____**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

COMES NOW Plaintiff Robin Moore, by and through undersigned counsel, and hereby sets forth this action for common law retaliatory discharge, violations of the Fair Labor Standards Act under 29 U.S.C. § 216(b) ("FLSA"), and/or violations of the Kansas Wage Payment Act, K.S.A. § 44-312 *et seq.* ("KWPA").

**PRELIMINARY STATEMENT**

1.      Plaintiff Robin Moore ("Moore" or "Plaintiff"), brings this action against Advance America, Cash Advance Centers of Kansas, Inc. ("Advance America") for unpaid wages including straight time and overtime compensation, related penalties, and damages.  Defendant's policies, practices, and/or procedures have been to require Plaintiff to work off-the-clock without compensation. Defendant's policies, practices, and/or procedures therefore resulted in a willful

failure to properly pay straight time and overtime compensation due and owing to Plaintiff. Doing so is in direct violation of both state and federal law.

2.      Plaintiff further brings claims against Advance America for common law retaliatory discharge. Specifically, Plaintiff asserts that she reported to management of Advance America, on at least two occasions, fraudulent conduct by her supervisor and conduct that violates the Kansas Uniform Consumer Credit Code, K.S.A. § 16a-1-101, et seq. ("UCCC").  Plaintiff further asserts that Defendant terminated her employment because she reported her supervisor's UCCC violations and fraudulent conduct.

## PARTIES

3.      Plaintiff is a citizen of the United States and currently resides in Atchison, Kansas.

4.      Plaintiff worked for Defendant Advance America from approximately January 2, 2013, until February 21, 2017. At the time of her termination, Plaintiff was a Central Sales Manager at Defendant's retail location at 820 Highway 59, Atchison, Kansas 66002.

5.      Defendant Advance America is a fully accredited financial company that helps people with personal loans, cash advances, and other financial services. There are over 2,000 Advance America locations in approximately 28 states. *See https://www.advanceamerica.net/about-us* (last visited on February 27, 2018).

6.      Defendant Advance America, Cash Advance Centers of Kansas, Inc. is a Delaware Corporation, registered and in good standing to do business in the State of Kansas.  Defendant owns and operates a location at 820 Highway 59, Atchison, Kansas 66002.  Defendant may be served through its resident agent, Corporation Service Company, 2900 SW Wanamaker Drive Suite 204, Topeka, KS 66614.

7.      At all relevant times, Defendant has been Plaintiff's employer.

8.      At all relevant times, Defendant has acted by and through its agents, servants, and employees, each of whom acted at all relevant times herein in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

9.      The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff Moore's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

10.      Jurisdiction over Moore's state law claims is based upon 28 U.S.C. § 1367 in that such state law claims are so related to the FLSA claim that they form part of the same case or controversy.

11.      This Court has original federal question jurisdiction over the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*. pursuant to 28 U.S.C. § 1331.

12.      This Court also has diversity jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

13.      This Court has personal jurisdiction over Defendant because Defendant conducts business and has substantial business contacts within this Judicial District.

14.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as the Defendant conducts business, has substantial business contacts, and/or can be found in this judicial district, and the causes of action set forth herein arose and occurred in substantial part within this judicial district.

15.      Because Plaintiff worked at the Defendant's Atchison, Kansas, location, venue is most appropriate in the United States District Court for the District of Kansas, and in the Kansas

City Division.

16.     At all relevant times, Defendant has been an "employer[s]" within the meaning of the FLSA and KWPA.

17.     At all relevant times, Defendant has employed "employee[s]," including Plaintiff within the meaning of the FLSA and the KWPA

18.     At all relevant times, Plaintiff was engaged in commerce and/or worked for Defendant, which is an enterprise engaged in commerce.

19.     At all relevant times herein, Defendant has had gross annual operating revenues in excess of $500,000.00 (Five Hundred Thousand Dollars).

## ALLEGATIONS SPECIFIC TO WRONGFUL TERMINATION

20.     Plaintiff Moore hereby incorporates each and every allegation and averment in this Complaint as if fully set forth herein.

21.     Plaintiff began working for Defendant Advance America as a Center Sales Representative on approximately January 2, 2013.

22.     Throughout her employment with Defendant, Plaintiff worked at Defendant's Atchison, Kansas retail location.

23.     When Plaintiff began her employment with Defendant, Brandi Freitas ("Freitas") was Central Sales Manager and Plaintiff's direct supervisor at the Atchison, Kansas store.  Ms. Freitas was responsible for Plaintiff's training and quickly identified Plaintiff as future management.

24.     In July of 2013, Plaintiff was promoted to Assistant Manager by Jennifer Taylor, the Divisional Director of Operations over the Atchison, Kansas store.  Ms. Freitas began training

Plaintiff to perform the assistant management duties in support of Ms. Freitas' Center Sales Manager duties.

25.     In late 2013, Plaintiff began noticing that Mr. Freitas would frequently act strangely while working with certain customers and appeared to be guarding her interactions with those customers.

26.     Plaintiff soon realized that Ms. Freitas was possibly violating Defendant's loan policies by allowing loans to be rolled over into new loans and by permitting individuals to obtain loans in the name of their spouses.   Plaintiff believed that this conduct violated Defendant's policies and lending regulations and confronted Ms. Freitas about these practices.

27.     Ms. Freitas told Plaintiff that there was nothing wrong with rolling over loans and that it was a necessary practice to keep her best customers.  Ms. Freitas further explained that, with respect to the individuals that she allowed to obtain loans in their spouses names, they were long-time customers who she knew were authorized to obtain the loan and therefore, there was no harm in permitting these loans.  Plaintiff accepted Ms. Freitas' explanation and did not press the matter further.

28.     In or around May 2014, after obtaining more experience in the Assistant Manager position, Plaintiff began to question the legitimacy of Ms. Freitas' lending conduct. Plaintiff reported Ms. Freitas' loan practices to John Slater, the new Divisional Director of Operations.  In order to report Ms. Freitas' conduct to Mr. Slater, Plaintiff drove from Atchison, Kansas, to Kansas City and met with Mr. Slater for at least an hour off-the-clock.

29.     Although Plaintiff believed her complaint would remain confidential, Mr. Slater informed Ms. Freitas that Plaintiff had complained about Ms. Freitas' lending practices. Ms.

Freitas immediately confronted Plaintiff about her complaint.  Consequently, Plaintiff was worried about losing her job and decided not to complain further about Ms. Freitas' loan practices.

30.     In or around August 2015, Freitas hired Jeanette Drake ("Drake") as Assistant Manager for Plaintiff's store.  Plaintiff believes Freitas received compensation for referring Drake, even though Freitas should have been disallowed from such compensation as she was involved with the hiring of Drake.

31.     In September of 2015, Plaintiff requested vacation time for a holiday and Freitas denied her request.  Plaintiff subsequently was unable to take her vacation and lost 80 hours of saved vacation time due to an inability to schedule such time due to company employee vacation black-out dates.

32.     In late 2015, Advance America was audited. Ms. Freitas instructed Plaintiff not to mention the loan rollovers or the spouse signature to those conducting the audit. Plaintiff was very concerned with Ms. Freitas' directive, but because she had already complained to Mr. Slater with no results, she believed she could not report Ms. Freitas' conduct without risking her job.

33.     In October of 2015, Plaintiff was promoted to Center Sales Manager and Ms. Freitas was promoted to Divisional Director of Operations.

34.     Plaintiff's relationship with Ms. Freitas continued to deteriorate. In May of 2016, Plaintiff began to notice that Ms. Drake's performance had begun to decline.  Plaintiff spoke to Ms. Freitas about Ms. Drake's performance and Ms. Freitas agreed to have Ms. Drake moved to a different store.

35.     In August or September of 2016, Defendant sent a group of executives to Plaintiff's store to check on its performance. Plaintiff told Ms. Freitas that she intended to inform the executives of the loan rollovers, the fraudulently signed loan documents, and unpaid off-the-clock

work.  Mr. Freitas immediately took Plaintiff off the schedule for three days until the executives had come and gone.

36.     On or around September 28, 2016, Plaintiff's relationship with Ms. Freitas had grown increasingly tense.  Plaintiff could no longer handle the stress of working with Ms. Freitas and decided to report Ms. Freitas' conduct to the Regional Director of Operations, Kayla Blaylock. Plaintiff reported to Ms. Blaylock the improper loan rollovers and Ms. Freitas' practice of allowing individuals to take out loans in the names of their spouses.

37.     Although Plaintiff did not want to quit her job, she believed she had no choice and was prepared to put in her notice of intent to quit when she reported Ms. Freitas' conduct to Ms. Blaylock. Plaintiff informed Ms. Blaylock that she had prepared a resignation letter, but Ms. Blaylock asked that she not quit and assured Plaintiff that she would not have to deal with Ms. Freitas.

38.     Ms. Blaylock informed Plaintiff that she was going to pass along what Plaintiff had reported to higher-level management.  Ms. Blaylock also told Plaintiff that she would not be informed of the outcome of any investigation.  Plaintiff does not think any action was taken against Ms. Freitas as a result of her report because Ms. Freitas never lost her promotion or title within the company. Plaintiff talked to Ms. Blaylock for approximately one hour and was not paid for her time.

39.     After reporting Ms. Freitas to Ms. Blaylock, Plaintiff only communicated with Ms. Freitas when necessary.

40.     In January of 2017, Ms. Blaylock was let go from Advance America.   When Plaintiff learned this information, she immediately knew that she had a target on her back and feared she would lose her job.

41.    On or about February 21, 2017, Ms. Freitas came to Plaintiff's store with Cindy Becker, a DDO from another region, and terminated Plaintiff. During the termination meeting, Plaintiff was informed she was being terminated for working off-the-clock for about two hours over a two-week period, even though it had been a regular occurrence for Plaintiff to work off-the-clock. It had also been a regular occurrence for Ms. Freitas to work off-the-clock while she was Center Sales Manager and it was a common occurrence for store managers at other stores to work off-the-clock throughout Plaintiff's employment.

## ALLEGATIONS SPECIFIC TO UNLAWFUL OFF-THE-CLOCK WORK AND UNPAID WAGE CLAIMS

42.    It was standard practice throughout Plaintiff's employment with Defendant for the Center Sales Manager to regularly perform off-the-clock work. Because the Center Sales Manager is often alone in the store, or is one of only two employees in the store, the Center Sales Manager is often interrupted while clocked out for lunch, either by customers or by the Assistant Sales Manager with questions.

43.    It is not reasonable for Center Sales Managers to turn customers away while they are clocked out because this would negatively impact their sales numbers. Additionally, because of the amount of work the Center Sales Manager is required to perform, it is not reasonable for an Center Sales Manager to start their lunch break over after every interruption.

44.    Plaintiff was trained by Freitas and regularly witnessed Freitas helping customers or assisting Plaintiff while Freitas was clocked out for her lunch break.

45.    In addition, Defendant stressed the importance of Center Sales Managers performing marketing activities on their personal time such as passing out flyers to prospective customers when employees were visiting restaurants, stores, or other public locations. Center Sales

Managers often pass out these flyers and engage in discussions with individuals regarding Defendant's business without being compensated for their time.

46.     When Plaintiff began working as Center Sales Manager in October of 2015, Defendant began requiring her to perform job duties without compensation. While she was clocked out for lunch, Plaintiff was often either interrupted by customers that needed assistance or by her Assistant Sales Manager with questions.

47.     In addition to the frequent lunch interruptions, Ms. Freitas had a habit of calling Plaintiff after work hours to discuss work matters.  As Ms. Freitas was aware, these conversations took place while Plaintiff was off-the-clock and Plaintiff was therefore not compensated for that time.

48.     Plaintiff also frequently ran errands for Defendant without being compensated for her time. Plaintiff regularly drove to the bank to drop off deposits without compensation and frequently picked up donuts for staff before work without being compensated for her time.

49.     Additional examples of situations where Plaintiff was required to perform job duties without compensation include the following:

a.  In October 2015, Plaintiff was called to a meeting with Ms. Freitas, Ms. Drake, and a Customer in the Advance America parking lot after business hours.  The meeting with the customer lasted 30-45 minutes.  After the customer left, Plaintiff, Ms. Freitas, and Ms. Drake spoke for another 30 minutes.  Plaintiff was not paid for any of this time.

b.  On one occasion Plaintiff had the day off and Ms. Freitas called her and told her that she needed to go to her Center because Ms. Blaylock had performed an audit of her Center and the Center did not perform well. Plaintiff had been in St. Joseph at the time and had to drive to her Center to speak with Ms. Baylock. When Ms. Blaylock called,

she told Plaintiff that the Center had done fine. Plaintiff was not paid for the 35-45 minutes she spent on the phone with Ms. Blaylock.

c.   In or around January or February of 2016, Plaintiff attended a tax training seminar in Salina, Kansas, which required an overnight stay and considerable preparation beforehand. Plaintiff spent 1.5 hours in her hotel room preparing for the seminar without compensation for her time.

d.   In late February 2016, Plaintiff had to go to her store on her day off after her Assistant Store Manager, Ms. Drake, mistakenly called the police. Plaintiff spent 20-30 minutes dealing with the police and was not compensated for her time.

e.   In March of 2016, Plaintiff was off work for three weeks for medical leave.  During this time, Plaintiff received multiples calls from her subordinates, Ms. Mora and Ms. Drake. Plaintiff was not compensated for the time she spent on the phone with Ms. Mora and Ms. Drake during her leave. Plaintiff believed that if she did not take the phone calls from Ms. Mora and Ms. Drake, she would be subject to discipline.

f.   On April 4, 2016, while still on medical leave, Plaintiff was required to go to the store to discuss moving logistics with contractors. Ms. Freitas was there as well. Plaintiff was there for approximately one hour and was not compensated for her time.

g.   On at least two occasions between April 2016 and July 2016, Plaintiff was required to go to her store to balance accounts that Ms. Drake had been unable to rectify.  Plaintiff worked for 15-30 minutes each time and was not paid for this time.

50.   Ms. Freitas had trained Plaintiff and the time-keeping practices in Plaintiff's store were learned from Ms. Freitas.

51.     Plaintiff estimates that she worked approximately five off-the-clock hours each week.

52.     Defendant was aware that Plaintiff was working off-the-clock because she regularly communicated with management after hours and on her personal time, including meeting with management to report Ms. Freitas' illegal conduct and coming to her store on her days off. Further, Defendant encouraged employees to work off the clock by requiring them to conduct marketing activities on their personal time, by only scheduling two employees in the store at a time, and by making it so Center Managers' sales numbers suffer if they fail to help customers while clocked out for lunch.

53.     Although Defendant was aware that Plaintiff was working off the clock, Defendant did not pay Plaintiff for any of that time.

## COUNT I
### Wrongful Discharge in Violation of Public Policy

54.     Plaintiff hereby incorporates each and every allegation and averment in this Complaint as if fully set forth herein.

55.     As demonstrated above, during her employment with Defendant, Plaintiff reported to management of Advance America, on at least two occasions, fraudulent conduct by Ms. Freitas and conduct by Ms. Freitas that violates the Kansas Uniform Consumer Credit Code, K.S.A. § 16a-1-101, et seq. ("UCCC").   For example, Advance America permitted loans to be rolled over causing a direct violation of K.S.A. § 16a-2-404(1)(c) and (6). The UCCC specifically provides that no pay-day loan, may "be repaid by proceeds from another loan." K.S.A. § 16a-2-404(6). Allowing loans to roll over into new loans also resulted in Advance America charging customers the 15% maximum fee per loan more than once, thereby exceeding the maximum 15% fee permitted by law. See K.S.A. § 16a-2-404(1)(c).

56.     The Kansas Legislature has clearly set forth a Kansas public policy of protecting consumers in lending transactions.  In particular, Kansas has enacted statutes and regulations for the purpose of protecting "consumer buyers, lessees, and borrowers against unfair practices by some suppliers of consumer credit. . ." and to "permit and encourage the development of fair and economically sound consumer credit practices." K.S.A. § 16a-1-102.

57.     Because Plaintiff reported her concerns directly to management, Defendant had knowledge that Plaintiff had reported these violations.

58.     After Plaintiff reported Ms. Freitas' fraudulent conduct and violations of the UCCC, Defendant retaliated against her by taking adverse action against her.  Specifically, but not-hereby limited, Defendant terminated Plaintiff's employment on February 21, 2017.

59.     A causal connection exists between the protected activity of reporting violations to management and the termination of Plaintiff's employment.

60.     The stated reason for Plaintiff's termination was false and pretextual.

61.     As a direct and proximate result of Defendant's actions and/or inaction, Defendant deprived Plaintiff of income as well as other monetary and non-monetary benefits.

62.     As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, and related compensable damage.

63.     Plaintiff is now suffering, and will continue to suffer, irreparable injury and monetary damage as a result of Defendant's retaliatory practices unless and until the Court grants her relief.

64.     Through its failure to take prompt and effective remedial action, in effect, Defendant condoned, ratified, and/or authorized the retaliatory actions against Plaintiff Moore.

65.     Defendant's conduct was willful, wanton, malicious, and showed a complete indifference to or conscious disregard for the rights of others, including Plaintifff's rights. Thus, an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and others from like conduct in the future is warranted.

66.     Defendant's actions have directly and proximately caused Plaintiff substantial economic loss, humiliation, mental stress, anxiety, pain and suffering.

**WHEREFORE**, Plaintiff Moore, prays for relief as follows:

a.   Actual damages for past and future lost compensation and benefits including, without limitation, other lost benefits due to defendant's wrongful discharge of plaintiff, as well as pre-judgment and post-judgment interest;

b.   All non-pecuniary compensatory damages in an amount to be proven at trial;

**c.**   Punitive damages;

**d.**   All attorneys' fees, litigation costs, and expenses; and

**e.**   Such other and further relief as this Court deems just and proper.

### COUNT II
### Violation of FLSA Against Defendant

67.     Plaintiff hereby incorporates each and every allegation and averment in this Complaint as if fully set forth herein.

68.     Plaintiff was employed by Defendant as a non-exempt manager within the three-year period preceding the filing of this lawsuit.

69.     At all relevant times herein, Plaintiff has been an "employee" and Defendant has been an "employer" as defined by the FLSA.  Therefore, Plaintiff is entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

70.     The FLSA requires, among other things, that employers whose employees are engaged in interstate commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in the production of goods for commerce pay employees overtime pay at a rate not less than one and one-half their regular rate of pay for work performed in excess of forty hours in a work week. 29 U.S.C. § 207(a)(1).

71.     Defendant is subject to the FLSA's requirements because it is an enterprise engaged in interstate commerce and its employees, including Plaintiff Moore, are engaged in commerce.

72.     Plaintiff regularly worked in excess of forty (40) hours per week without receiving compensation at the rate of one and one-half times her regular rate of pay for all hours worked in excess of forty (40) in a workweek.

73.     Plaintiff is not exempt from the right to receive overtime compensation under the FLSA.

74.     Defendant failed to compensate Plaintiff for all overtime hours worked at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work week, therefore, Defendant has violated the FLSA, 29 U.S.C. §§201, *et seq*., including 29 U.S.C. § 207(a)(1).

75.     The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a). Defendant's conduct was willful in that it knew that its time recording policies constituted a violation of the FLSA or it showed reckless disregard to whether the policy was a violation of the FLSA.  Defendant had knowledge that Plaintiff was performing work for which she was not paid and therefore, Defendant cannot reasonably claim that it did not know that its failure to pay Plaintiff was a willful violation of the Act.

76.  Plaintiff seeks damages in the amount of all respective unpaid overtime compensation at a rate of one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a work week, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other relief as the Court deems just and proper.

77.  Plaintiff individually seeks recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff Moore, prays for relief as follows:

    a.  An award of damages for unpaid overtime compensation at the rate of one and one-half times her regular rate due to Plaintiff, to be paid by Defendant;

    b.  An award of liquidated damages for overtime compensation due to Plaintiff, to be paid by Defendant;

    c.  Pre-judgment and post-judgment interest as provided by law;

    d.  Plaintiff's reasonable attorney's fees and costs of this action incurred herein;

    e.  Any and all such other and further relief as this Court deems necessary, just, and proper.

## <u>COUNT III</u>
### KWPA Unpaid Wages Claim

78.  Plaintiff hereby incorporates each and every allegation and averment in this Complaint as if fully set forth herein.

79.  Plaintiff brings a claim for Defendant's violations of the KWPA.

80.  At all relevant times, Defendant has been and, and continues to be, an "employer" within the meaning of the KWPA, K.S.A. 44-313(b).

81.  At all relevant times, Defendant has been and, and continues to employ, "employee[s]," such as Plaintiff Moore, within the meaning of the KWPA, K.S.A. 44-313(b).

82.     Plaintiff regularly performed off-the-clock work without being compensated for all time worked at the contracted hourly rate in violation of the KWPA.

83.     Plaintiff was not properly compensated for all hours worked in a workweek, at the applicable straight time rates that are due and owing under the KWPA.

84.     At all relevant times, Defendant has had a policy and practice of failing and refusing to pay Plaintiff for all hours worked at the applicable straight time rates that are due and owing in violation of the KWPA.  By failing to make these payments, Defendant has violated and continues to violate the KWPA, K.S.A. § 44-314.

**WHEREFORE**, Plaintiff Moore prays for relief as follows:

a.   Declaring and determining that Defendant violated the KWPA by failing to properly pay compensation due to Plaintiff;

b.   An award of damages for compensation withheld from Plaintiff, to be paid by Defendant;

c.   An award of additional damages as a statutory penalty pursuant to K.S.A. § 44-314, for willfully withholding wages from the compensation of Plaintiff, to be paid by Defendant;

d.   Pre-judgment and post-judgment interest, as provided by law; and

e.   Any and all such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Moore hereby requests a trial by jury of all issues triable by jury.

<u>**DESIGNATION OF PLACE OF TRIAL**</u>

**COMES NOW** Plaintiff Moore, by and through her counsel of record and hereby

designates the place of trial as the following: Kansas City, Kansas.


Dated: February 27, 2018                                      Respectfully submitted,

<u>s/ Kathryn S. Rickley</u>
Kathryn S. Rickley      KS #23211
Matthew E. Osman      KS # 23567
OSMAN & SMAY LLP
8500 W. 110th St., Suite 330
Overland Park, Kansas 66210
1-913-667-9243 (Phone)

**ATTORNEYS FOR PLAINTIFF**